## No. 26466

## The People of the State of Colorado v.
## Sherron F. Spencer
(524 P.2d 1084)

Decided July 22, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, for petitioner.

Sherron F. Spencer, pro se.

MR. JUSTICE DAY delivered the opinion of the Court.

This is an original proceeding, C.A.R. 21, brought by the Attorney General. The specific relief requested is that we enjoin respondent Spencer from further *pro se* litigation as plaintiff in both Colorado state and federal courts. We issued an order to show cause why that relief should not be granted. We hold that we are without jurisdiction to enjoin respondent from his activities in federal court, but make the rule absolute as to the Colorado courts.

I.

The core of this controversy apparently is the diverse disputes that respondent has had with his neighbors over irrigation water. While the conflict has allegedly taken less than civilized form, including the exchange of gunfire and threats to life and limb, it has certainly produced a cornucopia of litigation.

Respondent Spencer, who is neither a lawyer nor trained for the bar, has filed numerous *pro se* lawsuits. Each of these was filed in Montezuma County District Court. The following is but a brief summary of each suit and its current status:

Civil Action No. 5432. This suit was brought by Mr. Spencer on behalf of his water company against his neighbors. The suit is currently under threat of dismissal for want of prosecution by Mr. Spencer.

Civil Action No. 5443 was an action against an officer of the United States Government which alleged that respondent Spencer was embarrassed, suffered mental anguish and loss of business reputation. Following removal to United States District Court, it was dismissed for failure to state a claim.

Civil Action No. 5475 was apparently a malicious prosecution claim by respondent. Again, damages claimed were business loss, mental anguish and defamation of character. The current status of the suit is that it is subject to a show cause order of dismissal for failure to prosecute.

Civil Action No. 5509 was an action sounding in tort for official misconduct. It claimed money damages against various federal and state officers. Following partial removal to federal court, that portion of the lawsuit was dismissed. The remaining state claim was also dismissed for failure to comply with the rules of civil procedure. These procedural defects, it should be noted, were of the most fundamental and simple nature, and fully reveal respondent's lack of knowledge of the law.

Civil Action No. 5541, later consolidated with Civil Action No. 5463 on motion of the defendants, was an unsuccessful pair of suits by plaintiff against private citizens for damages allegedly caused by foreclosure of a mechanic's lien. Though he filed notice of appeal with the trial court, respondent has not prosecuted such appeal, but rather has written the Attorney General requesting the "appointment of an investigator."

Civil Action No. 5655, yet another *pro se* lawsuit filed by respondent, was a quiet title action. In this, as in at least three other cases, the local district judge — himself a defendant in a damage suit brought by respondent — disqualified himself. This action awaits appointment of another judge.

Civil Action No. 5667 was a lawsuit for a declaration that certain water rights belonged to respondent's water company.

Again, though other parties plaintiff were involved, plaintiff filed the suit *pro se*. The land appurtenant to the stream was, incidentally, the same land that was the subject of the suit in Civil Action No. 5464. Apparently, this suit is still pending.

In Civil Action No. 5680, respondent brought a water law suit in the district court. Because jurisdiction is in the Water Court per 1969 Perm. Supp., C.R.S. 1963, 148-21-1 *et seq.,* the case was dismissed for lack of jurisdiction.

Civil Action No. 5692, a claim for money damages for unauthorized use of water, prompted the Attorney General to intervene here. That suit further prompted a challenge by the defendants to service of process. Following an order directing respondent to file a return of the summons, he has done nothing.

Civil Action No. 5740 was yet another quiet title action filed *pro se* by respondent against his neighbors. Though a summons was served *pro se,* no complaint was filed or attached and the case was dismissed. C.R.C.P. 3.

Finally, Civil Action No. 5790 was a suit for malicious prosecution. A claim against the State of Colorado was dismissed for failure to state a claim.

II.

As the foregoing reveals, these *pro se* lawsuits by respondent Spencer have been in every instance unsuccessful. Indeed, with all due respect to respondent's legal talents, it would not be unfair to characterize them as replete with form and lacking in substance. They are a pile of papers evidencing strong emotion but no legal merit. The same may be said for his brief before this court.

In urging injunctive relief, the Attorney General points out that the sole purpose of each lawsuit is to harass the individual defendants and cloud the courts with personal vendetta. While we do not have sufficient information before us to test the validity of this allegation, we do agree that these *pro se* lawsuits are without merit and present a serious strain on the judiciary of this state. Accordingly, we must consider whether injunctive relief is proper. In our determination, however, we limit our inquiry to the propriety of

constant meritless litigation, without the advice of counsel, and only to the extent of the effect on the courts of this state. We are without jurisdiction to affect this respondent's rights in the federal courts and intimate no view as to that issue.

### III.

██ The Colorado Constitution guarantees to every person the right of access to courts of justice. Colo. Const., Art. II, Sec. 6. The section makes no mention that the exercise of the right to go to court is contingent upon either the merit of the claim or the presence of counsel. We see no purpose in imposing such limitations. It would be the height of chauvinism for this court, composed solely of lawyers, to imply that every legal claim must rest on the advice of counsel. Lawyers are not the *sine qua non* of a democratic society; but rather the means to achieve the recognition of an individual's rights guaranteed by that society. The lawyers are the servants; the public is the master.

On the other hand, it is all too often true that he who represents himself has a fool for a client. The legal system of this state is not a simplistic one that can be mastered by reason of good intent and raw vibration. The complexity of our legal system is great.

██ When such a multiplicity of suits is brought, of course, it is not only the individual litigants who suffer. The taxpayers, bound as they are to pay the costs of court administration, have an interest in insuring that meritless suits are not filed. This petitioner, in suing the district judge personally and then filing petitions to disqualify the judge, has caused other judges to be transferred into the county to determine the validity of his limitless claims. This is not only a waste of money and judicial time, but also interferes with the dockets in the jurisdiction from which the transferred judges must come. Finally, and perhaps most importantly, the efficiency of the judicial system in the county and the rights of other litigants who seek their day in court suffer when the courts are crowded and beclouded with the matters of one party. In a proper case, then, the right of free access

to our courts must yield to the rights of others and the efficient administration of justice.

Article VI, Section 2(1) of the Colorado Constitution vests this court with general superintending control over all inferior courts. One of the duties so imposed, to be sure, is to see that the courts are open to all citizens. Colo. Const., Art. II, Sec. 6. That right cannot be realized if one party can constantly litigate *pro se* to the detriment of the other citizens.

In the case of *Shotkin v. Kaplan,* 116 Colo. 295, 180 P.2d 1021 (1947), a similar problem was presented. *Shotkin* firmly established the power of this court to protect the courts, citizens and opposing parties from the deleterious impact of constant unfounded litigation. We believe such is also the case here. Respondent Spencer has been the master of the summons, the architect of the complaint and the trier of none. Not one of these *pro se* lawsuits has been drawn to successful conclusion and all too many have been neglected by respondent after the initial battle of forms. The consequences of such litigation have already been noted.

■ Respondent Spencer is therefore enjoined from proceeding *pro se* as plaintiff in the courts of this state until such time as he shall retain and be represented by counsel, and all matters pending in such court in which he is plaintiff *pro se* shall be held in abeyance until counsel is obtained. All matters where counsel is not obtained shall be subject to dismissal forty-five days from the filing of this opinion. This court will enforce such order with contempt citations if necessary.

Rule made absolute.

MR. JUSTICE KELLEY concurs in the result.

MR. JUSTICE GROVES and MR. JUSTICE ERICKSON do not participate.